Your Honor, it's the second case of the morning, call 209-694. People of the State of Illinois v. Johnny C. Parker. On behalf of Mr. Parker, Ms. Yasmin Nevaeh. And on behalf of the State, Ms. Anastasia Williams. Are you ready to proceed? I am, Your Honor. Good morning, Your Honor. Good morning, Counselor. May it please the Court. Your Honors, my name is Yasmin Nevaeh and I represent the appellant, Mr. Johnny Parker. Your Honors have just heard argument in the companion case of People v. William Filia. But in many respects, the instant case is much different in its complexion. Because in violation of Illinois law, pursuant to People v. Duncan. And federal law, pursuant to Bruton v. United States. Defense counsel allowed the single jury charged with determining the guilt of both defendants. To repeatedly hear co-defendants inadmissible confession of guilt. To witness Ricky Powell. That he and Johnny Parker went to rob some people. That they shot three people. And that they kicked in the door of the apartment down and started shooting. Counsel, if I may interject with a few questions. Sure. There was a motion to sever, was there not? There was a written motion to sever. And that was made prior to trial? That was made prior to trial. And when the testimony that you were referring to was proper. Or the trial court was made aware of the sentence. Did counsel make a new motion or renew his motion for severance based upon what you just described? Absolutely not. And that is the basis of the ineffective assistance claim. This evidence was inadmissible. Not only pursuant to federal law as you cited in Crawford and Bruton. But most primarily Illinois state law and People v. Duncan. And he was aware of this information. At the very least, he knew this prior to the start of trial. After jury selection. When was this statement by Powell disclosed? Initially? Later? On the EVA trial? What my records indicate is that we're not very clear if he had it at the time that he filed the motion to sever. Which was January 26th. But at the very least, I believe there's a discovery disclosure about Ricky Powell on February. And this trial begins in April. So at the very least, at the very least, we know that right after jury selection. The prosecutor in no uncertain terms informs all of the parties. I want to seek the admission of Celia's confession. And he terms it as such. And it's very clear. And at that point, defense counsel who was there and sitting in the room, the only objection he musters is the fact that when Powell made the statement, he was represented by counsel. But that his counsel was not informed of the taking of the statement. So that is the basis of the ineffective assistance. Your honors, this evidence is the most pernicious evidence that can be imparted to a jury. And there can be no doubt that error is prejudicial here. We have no inculpatory statements being made by the defendant. We have a weak identification case. Indeed, Graham's identification is weakened by eight independent factors. Not only that, your honors, this evidence was repeatedly admitted. Once during Powell's testimony. Again during Detective Jim Barduca's testimony. And your honors asked about closing arguments. The prosecutor referred to Celia's statement, which the prosecutor told the jury was as compelling as the other evidence presented. No less than 23 times by my conservative estimates. Powell himself was mentioned 40 times.  Remarkably, the jury heard the entire content of the statement in full, including the inculpation of Johnny Parker, twice during closing arguments. And as if that wasn't bad enough, this statement, including the admission of guilt, was tendered to the jury to use during their deliberative process. Your honors, as my briefs indicate, there are many grounds for reversal here. But your analysis need not go any further than state law. And the basis of that is People v. Duncan, a 1988 Illinois Supreme Court case. Which, by the way, the state concedes this case exists and the holding of this case. That independent of federal law, Illinois prohibits the admission of such evidence. Indeed, if we look at Duncan, the facts of this case are particularly more compelling. In Duncan, the defendant there was named, referred to by his nickname, Bill. There was no explicit naming of the defendant. Here we have Johnny Parker's name being mentioned repeatedly, time and time over again. As I indicated, I did want to go to the federal due process claim because the state entirely ignores this. And I think this is from a basic misunderstanding of the decision in Bruton v. United States. Bruton is not only a confrontation clause case, but indeed the principle holding there is a due process one. The court began in Bruton with an understanding that the confession was inadmissible. The question before the court in Bruton was whether the limiting instructions that were tendered to the jury could cure the resulting due process violation and the confrontation clause violation. And the court held that there was no way that this could be done. And it relied principally, and I think this is very important, on an earlier U.S. Supreme Court decision called Jackson v. Denham. In that case, the court struck down on due process grounds a New York state law that mimicked Bruton and the facts in this case quite remarkably. In that case, the jury was tasked with determining the voluntariness of the defendant's confession and then having done that to move on to the guilt-innocence phase of the defendant's trial. So presumably, a jury could find a confession involuntary, have to disregard that in the guilt-and-innocence phase, and the court found that that task was insurmountable. No jury could disregard that. And similarly, a jury could not disregard these powerfully incriminating extrajudicial statements. A single jury in a joint trial charged with determining the defendant's guilt. And that brings me again to the limiting instructions here. There were limiting instructions tendered, but we argue that they are ineffectual. Pursuant to people v. Duncan and pursuant to Bruton, the analysis is quite clear. But not only that, the instructions were quite remote in time. As a result of counsel's ineffective assistance, nobody introduced those instructions at the time of the admission of this evidence, during Powell's testimony or during Detective Jim Perdueco's testimony. Or indeed, there was no objection at all during closing arguments to the repetition again and again and the reference again and again to this statement. You're arguing both prongs of plain error, I think. Absolutely, Your Honor. Let's focus on the substantial rights, fundamental rights prong. If we were to find that there was a violation of substantial rights or fundamental rights, as was found in Reeves and Campbell and some of the other cases, how does the sufficiency of the evidence play into that? I realize that's the second prong of plain error. But isn't it possible to find that plain error lies in that one prong that involves a fundamental right, but that the evidence is overwhelming as far as guilt goes? I'm just asking in the abstract, not in this case, in the abstract. In the abstract, yes, because the courts recognize that that error is so fundamental that, yes, you can review a forfeited Bruton error or Duncan error, excuse me, under the substantial rights prong of the plain error test. But we would argue in this instant case that the evidence is absolutely not overwhelming, that you can review this under the closely balanced prong. Indeed, you can also review this for ineffective assistance, which, Your Honors, in their briefs, the state concedes that there was at least on the error prong, we have ineffective assistance by defense counsel here. And we know that there's no ineffective assistance, that this was not a strategic decision on behalf of defense counsel, because he makes inept attempts time and time again to exclude this evidence. He doesn't invoke the proper objection. And, Your Honors, a specific objection, for example, on foundation grounds during Powell's testimony, waives all other objections. So that is a basis of finding counsel ineffective. Now, even though you're arguing that the evidence in this case was not overwhelming, do you agree or disagree, if we were to reverse, that we should remand for a new trial and that for double jeopardy purposes there wasn't enough evidence? For double jeopardy purposes, perhaps. But as far as prejudice goes, the evidence, there's grounds for reversal under Strickland, whether you apply the constitutional harmless error standard, which is harmless beyond a reasonable doubt, or harmless error. First and foremost, Your Honors, we have no confession by the defendant. As I indicated before, there are eight independent factors that weaken Graham's identification. First, his testimony conflicts with yet a little. Yet a little said they wore masks. I couldn't identify them. He says no. I could see them as plain as day. Two, there's a 13-hour delay. There is no outcry statement. And this is very important because his testimony that he was out cold is emphatically impeached by Officer Whale, who says no, he was coherent and he was screaming for help. This is exactly the type of thing, and the case law is very clear in this regard, that a defendant who knows the other, the alleged perpetrators, would make an outcry statement. Or the nature of his injuries at the time. Shoulder injury. How bad was his shoulder? It's certainly bad. It's certainly bad. That's the evidence that it was a shotgun to the shoulder. It's not unusual that this person who just had his shoulder maybe blown apart might not be so worried about who did it, but more worried about getting a doctor to see his shoulder? Your Honor, that may be possible, but at the very least we would expect some kind of outcry statement. And the impeachment by Officer Whale is pretty significant. That he's saying he's coherent and Mr. Graham is saying no, I'm not. But if that were where we were ending, that's fine, but we're not. There are many other factors which weaken Graham's identification. Did the officer testify that he was coherent or that he was conscious? Coherent and conscious. I believe that's the case. I may be mistaken, but I'm pretty sure it was coherent and conscious. The other factors, again, as I alluded to before, is that Mr. Graham said that he had spoken to his family and friends beforehand. And that definitely provides evidence in the record to suggest that he may have been making these identifications based on street gossip. The lighting conditions were rather poor. All of the officers have testified, including yet a little, that the lighting in the living room was only on. In fact, one of the officers used a flashlight to make a DVD to get around the apartment when he was analyzing it. Also, Graham flip-flopped about where he got shot. This is very significant because in the August 16th statement, he says that as soon as the door started getting knocked on, I turned and ran. So how could he have seen anything if he turned and ran? At twilight, he testifies, well, immediately after getting shot, you know, I went into the kitchen and ran. Again, both circumstances lead us to the conclusion that he might not have had the best opportunity to even view his offenders. Also, there is a misidentification of Earl X, and this is quite significant. Again, Mr. Filia's counsel indicated that he, Graham, identifies X as the second person to enter into the apartment in his August 16, 2007 statement. And he claims that he's been mentioning Graham of X from the beginning. But all of a sudden, lo and behold, he's facing these pending escape charges, and he flips, and he says no. And his trial testimony for why he was mistaken about X just doesn't ring true. He says, well, I was mistaken about X because he was outside. But in fact, that's not what his August 16th statement says. His August 16th statement says he was the second person to enter. How would he know that he was outside? Actually, maybe that's even a question to ask, too, if he knew who was outside, if he had any opportunity. Outside, you mean outside the apartment or outside the building? I'm sorry, outside the apartment door. Finally, and this is quite significant, Mr. Graham was highly medicated at the time of the photo array, and indeed he admitted that he was intoxicated on cognac and marijuana at the time of the incident itself. All of these factors severely weaken Graham's identification. And then we have Deshea. She herself does not, of course, view, she only sees the offenders as they are leaving. She admits at trial that she did not get a good view, an opportunity to view the offenders. There's no in-court ID. And she testifies that she was trying to appease the police during the photo array, that she did whatever they wanted to get them out of that house as quickly as possible. And then again, we have an impressionable 15-year-old with psychological issues. The medications that she was taking are taken by people who have schizophrenia and bipolar disorder. Both of these illnesses have diagnostic, have elements to them that would affect someone's ability to perceive and view an incident. And of course, she's looking over the window of her second-story apartment, and she even testified, look, I didn't get that close to the window, I just looked over. So there's quite many questions about this. As to the circumstantial evidence regarding the cell phone, that was largely discredited by the defense who indicated Mr. Parker lived in just two blocks from that area. And indeed, the cell phone records indicate that the last cell phone call was made at 5 o'clock. That's roughly four or five hours before the incident. Have you reviewed the 20 pages of the mental health records that were given to the counsel? The 20 that I believe I could look at. What did they say about diagnosis or diagnoses? Absolutely nothing. The other question I have is Mr. Powell's statement, written statement, says, John, either park or pork. Was there ever any indication at trial or anywhere that they were speaking of someone or he was speaking of someone other than your client? No, absolutely not. And in fact, the prosecutor summarized the testimony from or what was included in the statement and made it. You said Parker. Johnny Parker. And didn't say Johnny Parker once, but multiple times over throughout the trial. Thank you, Your Honors. With that, we would respectfully request that you remand, reverse Mr. Parker's convictions and remand for a new trial. Thank you. Thank you. May it please the court and counsel, my name is Anastasia Brooks and I represent the people in this case. First of all, I would like to start with the Bruton issue because the defendant is making an assumption that the Sixth Amendment his co-defendant as the declarant. And because he didn't have an opportunity to cross examine his co-defendant who had a right not to testify and did not testify at the trial, the defendant's position is that their Sixth Amendment right was violated. But yet he improperly assumes that the statement declared the alleged statement that Powell's disavowed at trial, of course, but that that statement from filial to his friend Powell is testimonial. Of course, there's nothing like the cases in which a person goes into the police station and tells a police officer who the offenders are, because this is a situation in which there's not an anticipation that this statement is going to be used in the prosecution of a crime. Did Crawford really change the Bruton rule? Did Crawford, by talking about testimonial statements versus non-testimonial, basically change the Bruton rule? Well, the Sixth Amendment confrontation underpinning of Bruton is in fact changed by Crawford because of the development, Crawford's development of the Sixth Amendment as it applies to confrontation with respect to testimonial statements. Well, how do you respond to counsel's argument that Bruton was not only based in the Confrontation Clause but based in the Due Process Clause? Well, a Sixth Amendment confrontation development is not going to affect Bruton if it were in fact based on, like particularly the Duncan case was focused mostly on the rights to a fair trial in terms of rules of evidence that are designed to ensure a right to a fair trial. That's essentially, I think, was more like the wording of Duncan. It's because of Duncan in Illinois, it's not as important to really decide the case based on whether the Bruton rule is going to survive Crawford. Essentially, that's not as critical of a judgment as the cases cited in the defense reply brief and the cases cited in my brief, dealing with what is this impact on Bruton. I think that's not as important. If really what it comes down to is a clear or obvious error under Duncan, is that something that the forfeiture can be under either prong of a plain error? Essentially, the defendant has a burden of showing that the forfeiture should be excused, and that's the defendant's burden. If I understand what you are saying, are you saying that if Crawford has been complied with, then there can't be a Bruton violation? There cannot be a Sixth Amendment violation. I think the claim in the defense brief is the competition right under the Sixth Amendment was violated here. And I think because Filia is the declarant and he cannot be cross-examined, the question becomes was Filia's statement, the out-of-court statement, the one given to Powell, his friend, is that testimonial? If it's not testimonial, the Sixth Amendment doesn't apply. And I don't think the defendant cites a post-Crawford case saying that the Sixth Amendment applies to non-testimonial statements. So that's what they have to show in order to show a Sixth Amendment violation. The Bruton rule deals mostly with can a jury instruction, can a properly instructed jury be trusted to reach the right result? If there is a case in which this type of evidence comes in, and the holding of Bruton is not, that part is not changed. The jury instructions are not good enough to protect the defendant's rights under a situation. But the question becomes what are the defendant's rights here? In terms of confrontation, there is no confrontation right without a testimonial statement. And because this is not a situation where you went into the police and said this is who took, now Powell went and told the police and that's testimonial. But he got an opportunity to cross-examine Powell. So essentially that part of the confrontation clause is met. So that's why I want to distinguish between who's the declarant of each statement. It sounds like what you're saying is that Crawford relates to the admissibility of evidence in the nature of testimony by a witness. Bruton relates to whether or not a jury can remain impartial under certain circumstances. How are they mutually inclusive? How is Bruton dependent on what witnesses say if what we're concerned with is what the jury is going to do? Because the defendant has a confrontation right. And that's asserted here. And I was merely just trying to show that the defendant has no confrontation right without persuading that Powell, a filial statement to Powell is testimonial. And I don't think the defendant can do that where it's a situation where it was a conversation between friends and is not anticipated to result in prosecution. It's a non-testimonial situation. Is it correct to say that all Sixth Amendment rights are confrontational? Not all Sixth Amendment rights are confrontation rights. But with respect to the Sixth Amendment right of confrontation, that argument fails because they cannot persuade that the statement was testimonial. That's the only argument I want to make with that. Now, in terms of Reeves, Reeves was the first prong case dealing with the closely balanced nature of the evidence. And the reference here to a fundamental rights or substantial rights prong, there is no substantial rights prong of plain error. Because the rule provides, this is a 651 rule dealing with plain error, provides a substantial rights. An error not affecting substantial rights shall be disregarded. So you have to get over the substantial rights and even to get into plain error analysis. Are you saying Reeves did not find that it was substantial rights were involved? Reeves can find substantial rights, but that's a predicate for getting into plain error analysis. And then it hinged on whether the evidence was closely balanced in the first prong. Essentially, substantial rights does not get a defendant automatic reversal under the second prong of plain error, regardless of the strength of the evidence. Because, for example, like sentencing errors were held to affect substantial rights, the substantial right to liberty, but not every sentencing error is going to be reviewed as second prong plain error. So essentially, we cannot equate substantial rights, which non-substantial rights are disregarded under the plain error rule, with second prong plain error. The second prong plain error is a lot more narrowed, a lot more specific, dealing with the fairness of the proceedings, dealing with the integrity of the judicial process, dealing with something that is so prejudicial that an objection, as sustaining the objection and admonishing the jury to disregard, would not be sufficient, essentially. Or the defendant would be allowed, essentially enabled, to sandbag a type of error, ensuring an automatic reversal. So those categories of second prong plain error are so limited, and it's such an exceptional circumstance, that not anything can qualify. I understand what you're saying. Are you saying that it doesn't make any difference whether prejudice arose? Even if prejudice arose, if it wasn't a substantial right, it can't be plain error? Right, because the text of the rule, I believe it's 651, says that error is not affecting substantial rights or to be disregarded. So it has to affect a substantial right. Even clear, obvious errors not affecting substantial rights are not going to be unnoticed under the plain error rule. Don't you think it's a substantial right to have a fair trial? It is. Which the probability might be different if what apparently happened didn't happen? If an error in a closely balanced case affects the defendant's right to a fair trial, that's a substantial right that can be noticed under the first prong of plain error, and this forfeiture would be excused. However, the defendant would have that burden of persuading that the evidence is so closely balanced that this one error was just enough to tilt the scales of justice against him and cause the reviewing courts to doubt that the right result was reached, essentially, to ensure that the innocent are not wrongly convicted. That's the purpose of the first prong of plain error. The defendant can't show that with the physical evidence in this case, as we'll get to in a minute. But I was trying to say that the second prong of plain error, errors that are so prejudicial without regard to the weight of the evidence. Essentially, even if the evidence is so overwhelming, the defendant's entitled to his right of fair trial, if that's deprived and if a remedy is necessary to ensure the integrity of judicial process, essentially, that is reversible error no matter what under the second prong, which means that the error cannot be harmless, even beyond a reasonable doubt. So if you go to cases like Williams and Momin, where I believe it was in Williams, error was not harmless there. This type of error was not harmless. Why? Because the evidence wasn't overwhelming enough. They didn't say, well, this is like second prong of plain error, and it's going to be reversible no matter what. There is no harmless error, such as deprivation to the right to counsel, for example, that's second prong of plain error. That's automatic reversal. There is no harmless error rule. So essentially, if there is a possibility that this error could be harmless, if the evidence was overwhelming enough, they cannot be second prong plain error, because why would the defendant get a reversal under the second prong of plain error when the counsels didn't object, whereas if his counsel actually preserved the error, it would not be reversible under the harmless error rule. I understand your argument, but these are pre-People v. Nitz cases you're talking about. And the Supreme Court took great pains in People v. Nitz to tell us there's a distinction between harmless error and plain error. But I understand what you're saying, that what you're saying is even if it affects a substantial right, we could still find that the error was harmless beyond a reasonable doubt based upon the evidence of the case. Is that what your argument is? It's not exactly my argument. Because when the defendant mentions harmless error, harmless error specifically means that the state's burden show that there was no impact on the judgment. We do not have that burden. This error is forfeited. It's the defendant's burden to prove and to persuade this court that second prong plain error exists if we're leaving the first prong aside for the moment. So essentially, we're not taking on the burden to show harmless error. It's the defendant's burden. That's the distinction between the two. So essentially, if it affects substantial rights, it would appear to affect a substantial right because we're talking about the right to a fair trial here under Duncan. But as the Williams case shows, although the evidence wasn't strong enough in Williams, they didn't need to say the evidence wasn't strong enough in Williams. They could have simply said, well, this is like, we're just going to reverse this anyway, regardless of how strong the evidence is. They could have decided this type of issue on that ground, but they didn't. So that implies that this type of error can be harmless. If it can be harmless, it's not second prong plain error. So essentially, there's no way that the defendant can do better by his counsel not objecting. If the defendant was entitled to a severance and he didn't get it, do you think that's a violation of a substantial right? Or do you think that the grant or denial of a severance is a substantial right? Well, with respect to severance, it deals with the prejudice that might result from being tried in a joint trial, which affects his right to a fair trial. I think that all kind of leads back there. However, what we're talking about here, the severance is kind of a red herring situation because what he's entitled to is essentially cleansing of the statement of his name. That's what would have satisfied his right to a fair trial. If that statement had been redacted and wouldn't have referred to anybody or the statement would have been somehow reprepared and provided to the jury to say that William Filliard admitted. Of course, William Filliard's argument is that it shouldn't be. It doesn't look like you're arguing whether or not there's prejudice. And I'm only asking is the grant of a severance, is that a substantial right if in fact it's been established that one is entitled to a severance? Or is it considered insubstantial? I think it's probably because of the prejudice aspect of the reason why there is a severance. See, this is what you confused me about originally, which is you start talking. When you first started talking, you were talking about substantial rights and you were not considering prejudice. And now you're considering prejudice in relation to whether or not it's a substantial right. And my point is, is that if you are going to do that, it would appear that you're talking about an equation that it essentially is a tautology. If you wish to suggest that something is a substantial right, it should stand on its own two legs as to whether or not it's substantial. Whether or not we reverse or whether or not we affirm should be based upon whether or not there may or may not be prejudice. But whether or not it's a substantial right or not should not be based upon whether or not harmless error occurred or whether any prejudice occurred. A right is a right. I have the right to remain silent. Right, exactly. So if there's a violation, it all depends on whether or not it might affect the trial. But the right is still there. The right to a severance, though, I understood that to apply if there was prejudice to his rights. In other words, he doesn't have a right to a severance just because it's an inherent right like a right to a jury trial. In order to obtain a severance, he had to show some sort of prejudice. And that's why I'm trying to say it's not really an inherent right. He had to show some basis to have a clear right to a severance. Nobody has a clear right to a severance, but based upon the facts and circumstances, we can go from no right to absolute right. And the point I was trying to make was that the defendant's right to a severance should be tied in with his right to a fair trial, essentially prejudice against his right to a fair trial. Assume that it was absolutely clear that there should have been a severance. Was that a substantial right? If he would have been entitled to a severance, it would be a substantial right that would get him into the plain error arena in which he can start to show two prongs of plain error. But, Matt, I just want to make the point, though, is that if the statement was cleansed, he's not entitled to a severance. And I just would like this Court to refer carefully to the closing argument. And I'm not sure exactly what the content of that is, but I know the defendant is claiming here on appeal that Johnny Parker's name was mentioned repeatedly throughout the closing argument. I don't remember if that's exactly the case, but I just would like this Court to consider whether the prosecution actually adopted Powell's statement as evidence against Johnny Parker or if there is just a reference that this is evidence. Essentially, if the argument was this is evidence against Filiot and you should consider these two defendants independently. And now we go to Harman's error, essentially. No questions. Okay. Thank you, Your Honor. I just request you to affirm. Thank you. Would you wish to reply? Very quickly, Your Honor. First and foremost, I want to mention that the state seems to be conceding that there's error under state law grounds here under Duncan and Bruton federal due process clause. So that needs to be pointed out. As far as confrontation clause, we are dealing with what the prosecutors told the jury was a confession, a confession of guilt. I think the Court has ruled that a co-defendant's confession, our Illinois courts, is a testimonial statement. To the extent that the U.S. Supreme Court has not discussed co-defendant's confessions to date, we do know, however, in Crawford, they mentioned the admission of accomplice confessions to be unfavorable. And they make no qualification as to who that confession is made to, to a friend or to a police officer. The prejudice to the defendant is the same, the resulting confrontation clause error. There are a couple other points I want to make. I'm sorry. Did you say Illinois law says that a confession, no matter to whom it's made, is? No, not to whom it's made. No. I'm sorry. They said a co-defendant's confession in one particular case. I believe that was People v. Duff. They said that it was testimonial. No, that has not been answered yet. I think the Court realizes that states misanalyze the plain error rule, which is, of course, just a gateway to the Court reviewing an error. The only thing I would like to point out is that the Illinois Supreme Court and People v. Herron has been quite clear on that. There's a closely balanced prong, and then there's a substantial rights prong. Substantial rights prong, of course, does not consider the evidence presented. But once we get into the plain error, and once we find plain error that allows us to overlook forfeiture, then we still have to get to the prejudice aspect. Absolutely, Your Honor. And then the standard would be, if we're looking at federal error, was it harmless beyond a reasonable doubt? State error, was it harmless? We posit that under either standard, if you want to apply Strickland prejudice, Mr. Parker is entitled to reversal. And there can be no doubt that a substantial right has been violated here. This is not just defendants not getting severance. This is a prosecutor introducing this evidence not once, not twice. And just to clarify for defense counsel, I have the closing arguments here before me. They're cited in my briefs where the prosecutor says, and just so it's clear, let's – and he goes through the statement again. And he lists Johnny Parker's name. And there's no qualification that this evidence only applies to Mr. Philly. I'm not that that would have cured any error. But there is nothing, no qualification. It's the mere repetition of that statement and the fact that the jury receives it in deliberations, that there can be no doubt that a substantial right has been violated and that the defendant has been prejudiced. In fact, I have reviewed those cases, the very few that there are, which have found a brutal error to be harmless. And those are cases the state cites people of the moment. The only time the court found that it was harmless is where a defendant made a confession, a lengthy concession. We have nothing of the sort here. There can be no doubt that the error was prejudicial here. And for those reasons, we ask for a reversal and remand. Thank you very much.